Felícita Esther Blanco Rivera, etc., Plaintiff and Appellant, v. Municipality of Mayagüez, Defendant and Appellee.

No. 7908. Argued February 13, 1940.—Decided July 26, 1940.

*Enrique Báez García* for appellant.   *Oscar Souffront* for appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

On July 7, 1936, at about nine or ten o'clock at night, Felícita Esther Blanco, plaintiff in this case, was returning to her house with her sister and brother-in-law. On crossing the bridge known as "Dos Marinas" which runs over the Yagüez River, and connects Comercio Street with the ward of "Marina Septentrional," the said plaintiff heard a car approaching, left the center of the bridge, where she was walking with the others, and took to the right-hand side, where there was a viaduct for pedestrians; after taking five or six steps she fell through an opening on to the mud below,

receiving several injuries principally on her nose and others less serious on her leg and foot. She brought suit against the Municipality of Mayagüez and claimed $2,000 for damages.

In her complaint plaintiff alleged that the accident was due exclusively to the negligence of the municipality, among other things, because the municipality, in spite of its bad condition, left the bridge open to traffic, with an opening measuring 13 inches by 37 inches caused by a board that had fallen off the floor on the west side of the bridge, and through which opening any person walking across the bridge might fall. Also because despite the fact that the bridge was in such a bad condition the municipality did not forbid the traffic of persons going by, nor did it put up any sign near the place of danger that would warn pedestrians that said opening existed and neither did it place at nighttime any red light or any other light that would warn persons who came near that said place was dangerous.

In the 7th, 8th, and 9th averments the plaintiff set up that due to said negligence on the part of the municipality, she had suffered serious injuries which she describes as follows: Fracture on the nasal bones; deep cut on the front part of her nose; pneumonia; concussion of the brain; and slight wounds on her leg and foot; that due to the fracture and deep cut she has suffered physically and morally as said fracture makes her breathing difficult and has disfigured her nose permanently.

The defendant answered the complaint admitting some of the averments and denying others. It denied that the municipality had any notice that a board had fallen off from the floor of the bridge; that as soon as it had knowledge that said board had fallen or was missing, it immediately proceeded to replace the same; that it did not have any notice until the 8th of July, 1936, that is, the day after the accident. The defendant alleges that by information which it has a right to believe, said board fell off or was missing

on the same day of the accident, and not before, and that there is no reason why said board should be missing from its place, and that if said board was not there, it was due to the act of some person or persons, or to some accident that the defendant was unable to locate. The defendant alleges that it did not forbid the traffic, nor place any sign near the place of danger because it did not know of the existence of said hole in the bridge.

As special defense the defendant alleged that even if it had in some way been negligent in permitting said board to be missing on the night of July 7, 1936, and due to that negligence the accident had happened, there was also contributory negligence on the part of the plaintiff in not taking the necessary precautions when crossing the bridge and in not realizing that there was such opening on the viaduct of the west of the bridge, the said contributory negligence being the only immediate cause of the accident alleged in the complaint.

On September 21, 1937, the case went to trial. Evidence was introduced by the plaintiff tending to show that there had been other accidents on the same bridge. The testimony of Julio Guenard who alleges he had an accident three months before Felícita's accident was not accepted as evidence because defendant objected on the ground that it was too remote. Francisco Lojo and Hilton Cancel testified as to the accidents each one had suffered on the same bridge "Dos Marinas."

The other evidence introduced by the plaintiff tended to prove that the bridge was in bad condition; that it had been in a bad condition for many years; that the municipality knew about it. To this effect the plaintiff introduced the testimony of Tomás Ramírez, civil engineer and Superintendent of Public Works of the Municipality of Mayagüez.

He testified that said bridge was continually being repaired. On being asked what are the conditions of the bridge, he answered that it was in a bad condition; that the center of the bridge is for traffic and the sides for pedes-

trians; that he examines the bridge constantly; that there were no boards missing; that every time someone complains the bridge is repaired; that the repairs consist of removing boards that are in a bad condition; that some of the boards were rotten but did not appear to be so at first sight. On cross-examination he testified that the bridge was in bad condition; that there is a sign which says "Danger, Bridge in Bad Condition. Heavy traffic forbidden"; that the bridge is not closed because once they attempted to do so and the residents of the ward and certain business concerns protested; that the signs were put up before the accident; that they have been put up for about three years; that the signs had no light but that they were placed near the electric post; that there is an employee who is in charge of the inspection of the bridge. He was asked if the municipality had enough money to rebuild the bridge. To this plaintiff objected but the court overruled the objection. This is assigned as error.

The evidence for the defendant consisted of the testimony of Julio Piñán, the Inspector of Public Works and of two doctors. The testimony of the Inspector of Public Works tended to show that the bridge was in good condition; that he examined it on the day before the accident; that he inspected the bridge every eight, fifteen, or twenty days; that whenever a person complained about a board missing, they proceeded to make repairs. The testimony of the doctors tended to prove that the plaintiff did not have a fracture, pneumonia, nor concussion of the brain. Its other witness was Manuel Marín, Mayor of Mayagüez. This was all the evidence for the defendant. Then a view of the place was taken by the judge.

The trial court came principally to the following conclusions:

That the municipality had no knowledge at the time of the accident that the board was missing and the existence of the opening caused by removal of said board; that the defendant is not guilty of negligence because said bridge was

inspected, on the day before the accident, by a municipal employee and he found the bridge apparently in good condition; that signs were put up warning pedestrians that care should be taken on crossing the bridge; that no one complained to the municipality that said board was missing; that the plaintiff was guilty of contributory negligence because she left the center of the bridge and crossed to the side where the accident happened, while her companions stayed on the center of the bridge and suffered no injury; that the contributory negligence has been satisfactorily proved by the defendant; and finally that the injuries suffered by the plaintiff have not been proved.

The lower court cites McQuillin on Municipal Corporations extensively to support its conclusions as to contributory negligence.

On May 18, 1938, the lower court rendered judgment against the plaintiff who appealed to this court on June 17, 1938, and has assigned six errors.

██ The first assignment of error is as follows:

"1. The District Court of Mayagüez committed error of law in not hearing Nicolás del Valle, Julio Guenard, and Hipólita Guenard about an accident occurred to Julio Guenard before the one of the plaintiff, holding that the aforesaid accident was too remote."

There are cases where a previous accident would tend to show that the happening of the particular mishap should have been within the prevision of the defendant. In other words, if the municipality, by reason of other accidents, could have known that the bridge was in bad condition at the spot where the accident happened or at other places which were similarly affected, then negligence on the part of the municipality would have been clearly shown. The appellee very truly says that if the object of the excluded testimony was to show that the same aperture through which the appellant fell had existed for more than three months before and that other persons had fallen through the same hole, and that the municipality had knowledge of these accidents, then the

exclusion of the testimony would have been error. The appellee, however, insists that if these things had been shown it would not have objected to the admission of the testimony.

The appellant does not convince us that the evidence excluded would have thrown any light, at least with respect to the particular hole. So far as throwing any light on the general bad condition of the bridge, there might be a question, but given the position we shall take with respect to the accident the exclusion of the testimony of these witnesses was not ground by itself for the reversal of this case.

■ The second assignment of error reads as follows:

"2. The District Court of Mayagüez committed error of law in allowing the municipal engineer to testify that there were no funds to rebuild the bridge without supporting that statement with any documentary evidence."

The error was committed inasmuch as it is immaterial whether the municipality has sufficient funds at the particular time to repair a bridge if the public is allowed to travel over it. Funds should be available in some way or other, or else traffic over the bridge should be stopped. Again we do not insist too much on this second assignment of error because the judgment should be reversed on the main point.

We shall discuss the third assignment of error hereafter.

■ The fourth assignment of error is as follows:

"4. The District Court of Mayagüez committed error in rendering judgment dismissing the complaint because said judgment is contrary to the evidence offered and admitted and to the weight of the evidence."

This may be said to be the principal assignment of error. The whole evidence tends to show that this particular bridge had been in bad condition for years and that it should have been repaired and there was enough evidence to that effect before the court, even if it could not take judicial notice of the fact that the bridge was and had been in a very bad condition; and that the attempts of the engineer to make

little repairs here and there from time to time was not a sufficient compliance by the municipality of its duty to take care of this bridge.

We shall not attempt to cite the various witnesses, but it is almost a case, if not a case, of *res ipsa loquitur*. The bridge was entirely under the control of the municipality.

■ The fifth assignment of error reads thus:

"5. The District Court of Mayagüez committed error of law in deciding that the plaintiff is guilty of contributory negligence."

The theory of the court, as we understand it, is that plaintiff was walking in the center of the road in a place of safety and abandoned it to walk on the viaduct because an automobile was coming along. We should say that the municipality might be estopped to raise this ground because the viaduct was supposed to be exclusively for foot-passengers and there is not the slightest indication in the record that the plaintiff, Felícita Esther Blanco Rivera, or any of her relatives, knew that the viaduct was in a bad condition. If we are not mistaken, for some other purpose the municipality or its attorney insists that the plaintiff and her relatives ought to have been walking on the viaduct and not on the center of the road. We think the court was in error in finding any contributory negligence on the part of the plaintiff.

■ The sixth assignment of error relates to the failure of the court to admit photographs of the bridge. This may have been error, but as we have determined upon a reversal of the case on other grounds we find it unnecessary to discuss the matter thoroughly.

It was however error on the part of the court not to allow the rejected photographs to accompany the statement of the case as exhibits for the alleged error.

This is the third assignment of error:

"3. The District Court of Mayagüez was affected by bias, prejudice, and partiality in holding that the damages alleged had not been proved."

The court found that according to the testimony of the doctors at the trial the plaintiff had suffered, it might be said, principally from shock, and that although her nose was injured there was no fracture.

The plaintiff herself, nevertheless, testified that she suffered considerably from injuries to her nose and sometimes found her breathing difficult because of the fracture on the nasal bone.

It is very fortunate for Felícita Esther Blanco that she will recover from her accident. Dr. Ramírez Cuerda who attended her gave significant testimony to the effect that she had serious injuries on her nose and that she suffered from it for several days.

Hence, she was entitled to real damages.

Otherwise than this, a person in her condition, by reason of a fall, would suffer from shock and possibly other consequences. Under these circumstances the courts have usually awarded damages. They may not be high.

The plaintiff claimed $2,000 as follows: $500 for pains and suffering and $1,500 for fracture of the nasal bone and permanent injury to her nose. We think $2,000 is too much, but she should, under the recited circumstances, be entitled to $1,000 with costs and a judgment will be entered to that effect.

Mr. Justice De Jesús took no part in the decision of this case.